UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| YANIER HERNANDEZ CAPOTE,<br><br>Plaintiff,<br><br>v.<br><br>SECRETARY OF U.S. DEPARTMENT OF HOMELAND SECURITY et al.,<br><br>Defendants. | Case No. 25-13128<br>Honorable Shalina D. Kumar<br>Magistrate Judge Anthony P. Patti |

**OPINION AND ORDER GRANTING
AMENDED PETITION FOR A WRIT OF HABEAS CORPUS (ECF NO. 6)**

## I.    Introduction

Petitioner Yanier Hernandez Capote ("Hernandez Capote" or "Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that he is being unlawfully detained by the Respondents at a detention center in Michigan in violation of the Immigration and Nationality Act ("INA") and the Fourth and Fifth Amendment. *See generally,* ECF No. 6.

Respondents, who include Secretary of the United States Department of Homeland Security ("DHS"), Kristi Noem ("Noem"), United States

Attorney General, Pamela Bondi ("Bondi"), Director of the Executive Office for Immigration Review, Sirce E. Owen ("Owen"), Acting Director of U.S. Immigration and Customs Enforcement, Todd Lyons ("Lyons"), Chief Immigration Judge of the Executive Office of Immigration Review, the Honorable Anna C. Little ("Little"), along with Immigration and Customs Enforcement ("ICE") Detroit Field Office Director, Kevin Raycraft ("Raycraft"), argue that Petitioner's detention is not unlawful under the INA, specifically 8 U.S.C. § 1225(b)(2), and does not violate his Due Process rights. Respondents also urge the Court to refrain from deciding the merits of the petition until Hernandez Capote administratively exhausts his claims and to dismiss all Respondents other than Raycraft. *See generally*, ECF No. 8.

The Court has reviewed the parties' filings and is satisfied that the issues have been adequately briefed thereby making a hearing unnecessary. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below, the Court grants Hernandez Capote's petition and orders Respondents to provide him with a bond redetermination hearing within seven (7) days of this Order or otherwise release him.

## II.    Background

Petitioner is a citizen of Cuba who came to the United States on January 16, 2022 "seeking refuge and protection from a communist dictatorship." ECF No. 6, PageID.51.[1] After crossing the Mexican border into the United States, Hernandez Capote presented himself to DHS. DHS determined Hernandez Capote was not a "threat to national security or public safety" and released him the following day on an Order of Release on Recognizance so he could apply for asylum.

Petitioner timely filed his application for relief, but due to ICE's failure to update the immigration court in Detroit about petitioner's change of address, Petitioner missed his first hearing and was ordered deported. Upon discovery of the deportation order, Hernandez Capote filed a motion to reopen which was granted by the Immigration Judge. He then retained counsel and has appeared at all Immigration Court hearings.

On November 18, 2024, Hernandez Capote married his wife Magela, a U.S. citizen born in Cuba. Magela filed an I-130 Alien Relative Petition with U.S. Citizen and Immigration Services ("USCIS"), and Hernandez

---

[1] Except where otherwise noted, Hernandez Capote's amended petition is the source of these facts. *See* ECF No. 6.

Capote notified the Immigration Court of the marriage. The Immigration Judge granted a continuance of the case to allow USCIS to make a determination on the I-130 petition and set a status conference for April 6, 2026.

USCIS scheduled Hernandez Capote and Magela for an interview on their I-130 petition on August 12, 2025. The couple attended the interview with counsel at which Hernandez Capote was subsequently arrested and taken to the Detroit ICE field office for processing. Hernandez Capote was allowed to call his wife, who was with counsel, but the Detroit ICE officer did not allow Hernandez Capote to speak with his attorney. Counsel attempted to contact the Detroit ICE office on numerous occasions to get information on why his client was detained; however, supervisors told counsel "that they had no information and they were just following orders."

Hernandez Capote is currently detained in the North Lake Correctional Facility in Michigan. He filed a motion for bond, and a hearing was held on August 29, 2025 at which counsel for DHS argued that Hernandez Capote was detained pursuant to 8 U.S.C. § 1225(b) and his detention was mandatory.

In September 2025, Hernandez Capote filed his first petition for writ of habeas corpus, believing he was being detained pursuant to § 1225(b), as Respondents had represented during Hernandez Capote's August 29, 2025 bond proceedings. *See Hernandez Capote et al. v. U.S. Dep't of Homeland Sec., et al.*, 25-cv-12782 (E.D. Mich. Sep. 3, 2025). However, a declaration submitted by an ICE Officer for that proceeding stated that the arrest warrant for Hernandez Capote was issued under 8 U.S.C. § 1226. This new information led Hernandez Capote to voluntarily dismiss his petition without prejudice on September 24, 2025, "as there was no longer an issue about mandatory redetention." *Id*. The next day, Hernandez Capote filed a request for bond redetermination under § 1226(a) with the Immigration Court, but, notwithstanding the arrest warrant, the Immigration Judge denied the request without a hearing, holding that Hernandez Capote remains detained under § 1225(b), subject to mandatory detention, and therefore not entitled to bond. ECF No. 9-2. Hernandez Capote then filed the instant petition, as amended. ECF No. 6.

## III.   Discussion

### A. Legal Standard

Habeas relief may be granted when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal district courts are limited in their relief under § 2241 when considering immigration cases. *Morales Chavez v. Director of Detroit Field Office*, 2025 WL 2959617, at *3 (N.D. Ohio Oct. 20, 2025). Although district courts may not grant habeas relief as to the underlying immigration question, i.e., whether removal is proper, district courts may review whether an alien is lawfully detained; the Attorney General and DHS immigration authority does not abrogate § 2241's authority to grant the writ within these bounds. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the appropriate remedy to determine the legality of a person's custody). As noted above, Petitioner asserts that his detention pending the resolution of his removal proceedings violates the INA and the Fourth and Fifth Amendment.

## B. Proper Respondents

First, Respondents contend that only Petitioner's immediate custodian, here Raycraft, is a proper respondent in this habeas case. *See Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003). Indeed, the Sixth Circuit concluded in *Roman* that "the immediate custodian rule generally

applies to alien habeas corpus petitioners." 340 F.3d at 322. But it also noted possible exceptions to this rule. *Sanchez Alvarez v. Noem*, 2025 WL 2942648, at \*9 (W.D. Mich. Oct. 17, 2025) (quoting *Roman*, 340 F.3d at 322).

Detained aliens may be transferred to detention facilities in other districts, and such transfers may be used to deny aliens any meaningful opportunity to seek habeas relief. *Id*. (quoting *Roman*, 340 F.3d at 326); *see also Giminez Gonzalez v. Raycraft*, 2025 WL 3006185, at \*2 (E.D. Mich. Oct. 27, 2025) (transfer of detained petitioners, which is under the control of the Attorney General, can thwart a pending petition because director for the ICE field office where petitioner is detained is the proper respondent). Thus, courts have allowed an alien to "name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer." *Roman*, 340 F.3d at 326.

To ensure that Respondents maintain authority to enforce this Court's grant of habeas relief and order that Petitioner receive a bond hearing or, alternatively, be released even if Petitioner is transferred out of the district under Raycraft's control, the Court will not dismiss Attorney General Bondi

as a Respondent to these proceedings. *See Giminez Gonzalez*, 2025 WL 3006185, at *5 (citing *Sanchez Alvarez*, 2025 WL 2942648, at *9).

### C. Administrative Exhaustion

Next, Respondents argue that the Court should require Hernandez Capote to exhaust his administrative remedies before he is permitted to proceed with his habeas petition.

No applicable statute or rule requires administrative exhaustion here. *See Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *4, ___ F. Supp. 3d ___ (E.D. Mich. Aug. 29, 2025). When Congress has not mandated exhaustion, the decision to require it is within the sound discretion of the court. *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). Known as prudential exhaustion, the court-made doctrine "must comport with the statutory scheme and congressional intent." *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019) and *Shearson*, 725 F.3d at 593-94).

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

(2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

(3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos*, 2025 WL 2496379, at *4. But, even if prudential exhaustion would otherwise apply, courts may waive such exhaustion if the "pursuit of administrative remedies would be a futile gesture" or if the petition presents a "legal question…fit for resolution and delay means hardship." *Shearson*, 725 F.3d at 594; *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

"The Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Pizarro Reyes*, 2025 WL 2609425, at *3. (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)). Consequently, courts within the circuit are split. Compare *id.*; *Lopez-Campos*, 2025 WL 2496379, at *4-5; *Sanchez Alvarez*, 2025 WL 2942648, at *3; and *Mejia v. Woosley*, 2025 WL 2933852, at *2-3 (W.D. Ky. Oct. 15, 2025) (declining to enforce or excusing petitioners from prudential exhaustion) to *Laguna Espinoza v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9,

2025), *Hernandez*, 2025 WL244114, at *8-10, and *Villata v. Greene*, 2025 WL 2472886, at *2 (N.D. Ohio Aug. 5, 2025) (imposing prudential exhaustion requirements).

The Court agrees with the majority of the district courts in this circuit and around the nation in deciding not to enforce an exhaustion of administrative remedies requirement for these petitions. *See Casio-Mejia v. Raycraft*, 2025 WL 2976737, at *5 (E.D. Mich. Oct. 21, 2025) (collecting cases). To start, all three of the factors the Court is to consider weigh against imposing prudential exhaustion. First, the issues raised by the habeas petition are purely legal questions and do not require the agency to develop a record. *See Contreras-Cervantes v. Raycraft*, 2025 WL 2952796, at *5 (E.D. Mich. Oct. 17, 2025). Further, a bond appeal to the Board of Immigration Appeals ("BIA") is not required for Hernandez Capote's Fourth and Fifth Amendment claims because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006). Finally, the BIA has conclusively rejected Petitioner's argument, precedentially deciding[2] that a noncitizen who has been present in the

---

[2] The BIA may designate a decision as precedential, meaning that it will control in "all proceedings involving the same issue or issues." 8 C.F.R. 1003.1(g)(2).

Page **10** of **19**

United States for a period of years or decades without inspection or authorization is an "applicant for admission" under § 1225(a)(1) and thus subject to mandatory detention during removal proceedings under that section. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025); *see also Casio-Mejia*, 2025 WL 2976737, at *4 (noting that *Yajure Hurtado* is binding on DHS and immigration courts, but not on district courts). Accordingly, Hernandez Capote is unlikely to obtain the relief he seeks through the administrative process, and any appeal of bond determination to the BIA will not preclude but merely delay the need for judicial review. Because administrative review in this instance would be futile, and because every additional day in unlawful detention presents a hardship for Petitioner, the Court declines to impose an exhaustion requirement upon Hernandez Capote and will address the merits of his petition. *See Lopez-Campos*, 2025 WL 2496379, at *5.

### D. Applicable INA Provision

Under the general provisions of the INA, an "alien who arrives at a 'port of entry,' i.e., a place where an alien may lawfully enter, must apply for admission." *Thuraissigiam*, 591 U.S. at 108. Aliens who are detained trying to enter elsewhere are treated similarly. *Id*. (citing 8 U.S.C. §§ 1225(a)(1),

(3)). However, "several classes of aliens are 'inadmissible' and therefore 'removable.'" *Id*. at 107-08 (2020)(quoting 8 U.S.C. §§ 1182, 1229a(e)(2)(A)).

The removal process provides for an evidentiary hearing before an immigration judge, where the alien may challenge their removal, including applying for asylum. *Id.* (internal citations omitted). Should their challenge be rejected, the alien may appeal the removal order to the BIA and may also be entitled to review in a federal court of appeals. *Id*. While his removal proceedings are being litigated, the alien will generally be detained. *Id*. However, the classification of the alien determines whether that detention is mandatory or discretionary. Compare 8 U.S.C. §§ 1225(b)(2)(A) with 1226(a).

The interplay of these statutes, which both govern detention of noncitizens pending removal proceedings, controls the outcome of the petition before the Court. Section 1225 governs the expedited removal process and requires mandatory detention under its provisions, while § 1226 permits discretionary release from detention for certain aliens. *Morales Chavez*, 2025 WL 29596, at *3. Respondents contend that § 1225(b)(2) applies to Petitioner, thereby subjecting him to mandatory

detention. ECF No. 8. Hernandez Capote, however, maintains that §
1226(a), not § 1225(b)(2), governs his removal proceedings and he is thus
entitled to a bond determination hearing. ECF No. 6.

Section 1225, titled "Inspection by immigration officers; expedited
removal of inadmissible *arriving* aliens; referral for hearing," provides that,
upon *arrival*, all applicants for admission must undergo screening by an
examining immigration officer, and if it is determined that the applicant for
admission "is not clearly and beyond a doubt entitled to be admitted," the
applicant "*shall* be detained for" standard removal proceedings. 8 U.S.C. §
1225(b)(2)(A) (emphasis added). Section 1226, titled: "Apprehension and
detention of aliens," provides for a discretionary detention framework, and
states, in relevant part: an alien may be arrested and detained pending a
decision on whether the alien is to be removed from the United States.
Except as provided in subsection (c) and pending such decision, the
arrested alien may remain detained or may be released on bond. 8 U.S.C.
§ 1226(a). Subsection (c) of § 1226 prohibits noncitizens who have been
charged with, arrested for, convicted of, or have admitted to committing
acts which constitute the essential elements of any burglary, theft, larceny,
shoplifting, or assault of a law enforcement officer offense, or any crime

Page **13** of **19**

that results in death or serious bodily injury to another person from being released on bond. 8 U.S.C. § 1226(c). Relevant here, noncitizens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an Immigration Judge. *Santos Franco v. Raycraft*, 2025 WL 2977118, at *4 (E.D. Mich. Oct. 21, 2025) (citing 8 C.F.R. §§ 1236.1(c)(8), (d)(1)).

Hernandez Capote contends that his continued detention is unlawful because he was not released or provided with a bond hearing as required by § 1226(a). Respondents argue that § 1226(a) does not apply, and that he is lawfully detained under § 1225(b)(2). As more than 30 district courts have decided in "reviewing the statutory text, statutory history, congressional intent, and statutory application for the last three decades," Hernandez Capote's detention is governed by § 1226(a). *Jimenez Garcia v. Raybon*, 2025 WL 2976950, at *4 (E.D. Mich. Oct. 21, 2025) (cleaned up) (collecting cases).

This multitude of district courts has explained that § 1225(b)(2) applies to arriving aliens undergoing inspection, which generally occurs at the United States' border or ports of entry, when they are seeking lawful entry into the United States." *Sanchez Alvarez*, 2025 WL 2942648, at *5. In

contrast, § 1226(a) applies to a noncitizen already residing within the United States when apprehended and arrested. *Jiminez Sanchez*, 2025 WL 2976950, at *4 (quoting *Lopez-Campos*, 2025 WL 2496379, at *8).

This Court agrees with the majority viewpoint in finding that § 1226(a), not § 1225(b)(2), applies to noncitizens in Hernandez Capote's situation. Neither DHS's decision to upend 30 years of reasoned statutory interpretation, the BIA's precedential decision sustaining the DHS about-face, nor the fractional minority of district court cases[3] finding § 1225(b)(2) applicable to noncitizens like Petitioner persuade the Court otherwise. *See Yajure Hurtado*, 29 I&N Dec. 216; *Chavez v. Noem*, 2025 WL 2730228, ___ F. Supp. 3d ___(S.D. Cal. Sep. 24, 2025) (adopting *Yajure Hurtado*'s statutory interpretation to find § 1225(b)(2) applicable to noncitizens long present in the United States) and *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sep. 20, 2025) (concluding that aliens may be subject to both § 1225(b)(2) and § 1226(a) and that DHS may choose which statute to rely upon in detaining an alien subject to removal).

---

[3] Only two of at least 36 district courts to have addressed this issue have held that § 1225(b)(2) applies to those in the same circumstances as Petitioner. *See infra*, n. 4.

As previously noted, BIA decisions are not binding on the Court. Nor is the Court bound by the aberrant holdings of the two outlying cases concluding that § 1225(b)(2) applies rather that § 1226(a). These cases, from out-of-circuit district courts, not only contradict cases from the same district, *compare Chavez*, 2025 WL 2730228 to *Martinez Lopez v. LaRose*, 2025 WL 3030457 (S.D. Cal. Oct. 30, 2025), and *compare Vargas Lopez*, 2025 WL 2780351 to *Garcia Jiminez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025) and *Jacinto v. Trump*, 2025 WL 2402271 (D. Neb. Aug. 19, 2025), but also conflict with the growing number of decisions from district courts nationwide.[4]

---

[4] *See, e.g.*, *Echevarria v. Bondi*, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Loa Caballero v. Baltazar*, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); *Lopez v. Hardin*, 2025 WL 2732717 (M.D. Fla. Sep. 25, 2025); *Puga v. Ass't Field Office Director*, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025); *Mariano Miguel v. Noem*, 2025 WL 2976480 (N.D. Ill. Oct. 21, 2025); *Alejandro v. Olson*, 2025 WL 2896348 (S.D. Ind. Oct. 11, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427, ___ F. Supp. 3d ___ (N.D. Iowa Sep. 23, 2025); *Helbrum v. Olson*, 2025 WL 2840273 (S.D. Iowa Sep. 30, 2025); *Barerra v. Tindall*, 2025 WL 2690565 (W.D. Ky. Sep. 19, 2025); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Chogllo Chafla v. Scott*, 2025 WL 2688541 (D. Me. Sep. 22, 2025); *Maldonado de Leon v. Baker*, 2025 WL 2968042 (D. Md. Oct. 21, 2025); *Sampiao v. Hyde*, 2025 WL 2607924, ___ F. Supp. 3d ___ (D. Mass. Sep. 9, 2025); *Maldonado v. Olson*, 2025 WL 2374411, ___ F. Supp. 3d ___ (D. Minn. Aug. 15, 2025); *Vazquez v. Feeley*, 2025 WL 2676082 (D. Nev. Sep. 17, 2025); *Jimenez v. FCI Berlin*, 2025 WL 2639390, ___ F. Supp. 3d. ___ (D.N.H. Sep. 8, 2025); *Zumba v. Bondi*, 2025 WL 2753496 (D.N.J. Sep. 26, 2025); *Salazar v.*

Hernandez Capote has resided in the United States for over three

years and was apprehended at his scheduled I-130 interview, not upon

arrival at the border or a port of entry.[5] Thus, under § 1226(a), Petitioner is

entitled to a discretionary bond determination hearing. And because

Hernandez Capote has been detained without having received a hearing

for bond redetermination,[6] he is in federal custody in violation of federal

---

*Dedos*, 2025 WL 2676729 (D.N.M. Sep. 17, 2025); *Hyppolite v. Noem*, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); *Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Mata Velasquez v. Kurzdorfer*, 2025 WL 1953796 (W.D.N.Y. July 16, 2025); *S.D.B.B. v. Johnson*, 2025 WL 2845170 (M.D.N.C. Oct. 7, 2025); *Padron Covarrubias v. Vergara*, 2025 WL 2950097 (S.D. Tex. Oct. 8, 2025); *Gonzalez Martinez v. Noem*, 2025 WL 2965859 (W.D. Tex. Oct. 21, 2025); *Quispe v. Crawford*, 2025 WL 2783799 (E.D. Va. Sep. 29, 2025); *Rodriguez v. Bostock*, 2025 WL 278499, ___ F. Supp. 3d ___ (W.D. Wash. Sep. 30, 2025).

[5] Hernandez Capote was arrested at the border upon first arriving in the U.S. in 2022. *See* ECF No. 6-4. He was released on his own recognizance pending removal proceedings. *Id.* Hernandez Capote asserts that he applied for asylum relief and has complied with Immigration Court requirements and attended all noticed hearings related to those proceedings. ECF No. 6, PageID.51-52. After marrying in November 2024, he applied for a change of status, seeking permanent residence as the spouse of a U.S. citizen. *Id.*; ECF No. 6-5.

[6] Hernandez Capote filed a renewed bond motion with the warrant reflecting that he had been detained under § 1226(a), but on October 9, 2025, the Immigration Judge denied it, without a hearing, indicating that Hernandez Capote was subject to mandatory detention under § 1225(b) and he was thus without jurisdiction to hold a bond redetermination hearing. ECF No. 9; ECF No. 9-2.

law. Thus, his habeas petition will be granted, and Respondents will be directed to provide Hernandez Capote with a bond redetermination hearing under § 1226(a) on or before November 10, 2025, or otherwise release him.

### E. Constitutional Claims

Given that this Court is granting the relief Petitioner requests based on its interpretation of the applicability of § 1226(a), the Court will decline to decide the merits of Hernandez Capote's constitutional claims. *See Pizarro Reyes*, 2025 WL 2609425, at *8. If Respondents do not provide Hernandez Capote with a bond determination hearing or release him by November 12, 2025, he may renew his claims under the Fourth and Fifth Amendments.

## IV.   Conclusion

For the reasons discussed, the Court **GRANTS** Hernandez Capote's petition for habeas relief. ECF No. 6. To that end, the Court **ORDERS**:

1. Respondent Raycraft to provide Hernandez Capote with a bond hearing under § 1226(a) on or before **November 12, 2025**, or otherwise release him; and

2. Respondent Raycraft to file a status report to certify compliance with this order on or before **November 14, 2025**. The status report

shall detail when Hernandez Capote was released or when his bond

hearing occurred, if bond was granted or denied, and—if bond was

denied—the reasons for the denial.

The Court further **ORDERS** that Respondents Raycraft and Bondi will

remain respondents in this action, but all other Respondents are

**DISMISSED**.

**IT IS SO ORDERED.**

s/ Shalina D. Kumar
SHALINA D. KUMAR

Dated: November 5, 2025          United States District Judge